**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **SOCIETY OF PROFESSIONAL ENGINEERING EMPLOYEES IN AEROSPACE, IFPTE LOCAL 2001, AFL-CIO, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 05-1251-MLB** |
| **THE BOEING COMPANY,** | ) | |
| **Defendant.** | ) | |
| **DAVID A. HARKNESS, on behalf of himself and all others similarly situated, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 07-1043-MLB** |
| **THE BOEING COMPANY, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on the following motions:

1. Plaintiffs' Motion to Compel "Legal" Documents (Doc. 227);

2. Plaintiffs' Motion to Compel Bargaining Documents (Doc. 229);

3. Boeing's Motion for a Protective Order (Doc. 233);

4. Boeing's Motion for a Protective Order (Doc. 237);

5. Plaintiffs' Motion to Amend the Scheduling Order (Doc. 263);

6. Boeing's Motion for a Protective Order (Doc. 282); and

7. Boeing's Motion for a Protective Order (Doc. 293);

The rulings are set forth below.[1]

## Nature of the Cases

The genesis of these consolidated cases is the sale of Boeing's commercial airplane division in Wichita, Kansas to Spirit AeroSystems, Inc. Plaintiffs are two labor unions and two groups of former Boeing employees suing on behalf of themselves and others similarly situated. Defendants are Boeing, Spirit, and various employee benefit plans. Highly summarized, plaintiffs seek to: (1) enforce collective bargaining agreements between the unions and Boeing and (2) secure favorable rulings concerning pension and health benefits for certain employees between ages 49 and 55. The circumstances concerning the asset sale to Spirit and the nature of the claims have been described in prior opinions and will not be repeated except where necessary for context in addressing individual motions. See, e.g., Report and Recommendation, Doc. 57.

---

1 Because certain motions are interrelated, the discussion/analysis of the motions is based on the nature of the parties' arguments rather than in strict chronological order. For example, after plaintiffs moved to compel certain documents (Doc. 227), Boeing moved for a protective order (Doc. 282) concerning the same disputed documents.

**Plaintiffs' Motion to Compel "Legal" Documents (Doc. 227)**
**Boeing's Motion for a Protective Order (Doc. 282)**

Plaintiffs move to compel the "Boeing defendants" to produce (1) certain communications between Boeing's Employee Benefit Plans Committee and a Washington, D.C. law firm and (2) the electronic files of an in-house attorney. (Doc. 227).[2] Boeing opposes the motion and moves for a protective order, arguing that the requested materials are protected by the attorney-client privilege and/or attorney work product doctrine. (Doc. 282). For the reasons set forth below, plaintiffs' motion shall be DENIED and Boeing's motion shall be GRANTED.

**A. Relevant Background**

The circumstances related to the creation of the disputed discovery materials are critical to the court's analysis; therefore, the sequence of events must be described in some detail. As part of the sale agreement between Boeing and Spirit, Spirit agreed that it would offer employment after the closing date to selected Boeing employees and provide health care and pension benefits to the "hired" employees similar to those benefits offered by Boeing. Boeing agreed to transfer assets from the Boeing Pension Plan to Spirit's Pension Plan so that the Spirit Plan would have sufficient assets to provide benefits similar to

---

[2] The "Boeing defendants" are: (1) Boeing, (2) The Boeing Company Employee Benefit Plans Committee, (3) The Boeing Company Employee Retirement Plan, (4) The Boeing Company Retiree Health and Welfare Benefit Plan, and (5) The Boeing Company Layoff Benefits Plan. For editorial clarity, the court will refer to the "Boeing defendants" as "Boeing" in the singular.

Boeing's benefits.

Plaintiffs' claims are based on bargaining agreements and benefit plans which allegedly provide "bridge" retirement benefits for "laid-off" employees ages 49 to 55 with ten years of Boeing employment.[3] Plaintiffs argue that they satisfy the age and service requirements and were "laid-off" by Boeing on June 16, 2005; therefore, they are entitled to the bridge benefits.[4] Boeing denies that the employees in the age group of 49 to 55 are entitled to the bridge benefits.

Plaintiffs were not provided with the bridge benefits and the Society of Professional Engineering Employees in Aerospace, IFPTE Local 2001, AFL-CIO ("SPEEA") filed suit on August 8, 2005 alleging that Boeing breached collective bargaining agreements in violation of LMRA § 301 and also violated ERISA provisions. (Case No. 05-1251-MLB). However, SPEEA's ERISA claims were dismissed on January 8, 2007 because the union lacked standing to pursue the ERISA benefits. Memorandum and Order, Doc. 63.[5] Because SPEEA lacked standing to pursue the ERISA claims, several former Boeing employees filed

---

3 Boeing employees were apparently eligible for reduced retirement benefits beginning at age 55. "Bridge" benefits were an interim benefit for employees ages 49 to 55 who were laid off before reaching age 55.

4 Certain plaintiffs also seek severance benefits.

5 The International Association of Machinists and Aerospace Workers, AFL-CIO (IAM) was added as a plaintiff by amendment on January 23, 2007. IAM asserts § 301 claims similar to SPEEA's § 301 claims.

suit on February 16, 2007 and asserted various ERISA claims. (Case No. 07-1043-MLB).[6] The two cases were consolidated on January 3, 2008.

On February 23, 2007, a week after filing their lawsuit, plaintiffs Harkness, Hartig, David Lewandowski, Jene Lewandowski, Owens, Pullen, Shabshab, and Zagonel submitted administrative claims for benefits under the Boeing Pension Plan.[7] Because of the pending litigation, the pension service center engaged an in-house attorney, Marianne Culver, in June 2007 to provide legal advice concerning the administrative claims. Plaintiffs' benefit claims were denied in the summer of 2007 and plaintiffs appealed the denial to The Boeing Company Employee Benefit Plans Committee (the "Committee") in October 2007. Plaintiffs' appeal referred to and incorporated the allegations in their Second Amended Complaint.

In November 2007 the Committee retained outside legal counsel to:

---

6 There are two groups of employee plaintiffs. One group, referred to as the Harkness class, seeks only pension and retiree medical benefits. The Harkness class apparently consists of union-represented employees ages 49 to 55 with 10 or more years of service whose Boeing employment ended on June 16, 2005 but who were then hired by Spirit. The second group, referred to as the McCartney class, consists of union-represented employees ages 49 to 55 with 10 years of service who were terminated by Boeing on June 16, 2005 and (1) did not apply for employment with Spirit or (2) applied for employment and received an offer from Spirit but rejected the offer.

7 This is a highly summarized version of the sequence of events surrounding plaintiffs' administrative requests. Boeing provided a much more detailed recitation of the sequence in its brief. For example, plaintiffs' counsel submitted claims for pension benefits on February 23 and supplemented the request on June 6, 2007. However, the court will not lengthen this opinion by addressing every minor detail concerning the administrative claims.

> help it navigate the unfamiliar waters where the individuals claiming benefits had already filed suit in federal court seeking the very same benefits that were the subject of their administrative claims and were asserting that the Committee had to respond to the allegations in the lawsuit in deciding the administrative appeal.

Doc. 283, p. 10. After consulting with outside counsel, the Committee advised plaintiffs on November 15, 2007 that:

> The letter of appeal indicated that you would like to incorporate in these appeals the amended complaint filed in the United States District Court for the District of Kansas at Wichita under Case No. 6:07-cv-1043 and attached to your letter of appeal. As we have indicated previously, the Committee cannot respond to a complaint itself in its response to the appeals. The Committee wishes to ensure it considers fully the facts and circumstances of each individual appellant's appeal, and requests that you clearly indicate to the Committee, in writing, which facts and arguments in the complaint you consider relevant to the appeals.

Plaintiffs responded to the Committee with a November 30, 2007 letter stating:

> We object to your assertion that the Committee cannot consider the Complaint filed in U.S. District Court for the District of Kansas, Case No. 6:07-cv-1043. It is our position that all facts and claims raised in the pending lawsuit are properly before the Committee.

Plaintiffs then supplemented their appeals by setting out 76 paragraphs from their Complaint.[8] Plaintiffs also reserved the right to supplement the administrative record "if additional facts are revealed during discovery in the pending litigation or otherwise." The Committee denied plaintiffs' appeals in December 2007.

---

[8] The 76 paragraphs mirror paragraphs in the complaint with minor exceptions, such as not using the terms "defendant" and "plaintiff" found in the complaint.

**B. Disputed Discovery**

The disputed discovery materials addressed in plaintiffs' motion to compel (Doc. 227) and Boeing's motion for a protective order (Doc. 282) involve the following four groups of documents:

> 1. E-mail files and attachments of Alexander Clark, an outside attorney who provided legal advice to the Employee Benefits Plan Committee in regards to the Committee's response to plaintiffs' appeal. The e-mails and attachments discuss legal advice with respect to the appeals and include legal advice from in-house counsel Marianne Culver.
>
> 2. E-mails, attachments, and electronic files of Robin Solomon, outside counsel who provided legal advice to the Employee Benefits Plan Committee regarding the Committee's response to plaintiffs' appeals and pending litigation. The e-mails and attachments include legal advice from Marianne Culver. The electronic files include draft responses to the employees' claims and appeals.
>
> 3. E-mail files and attachments of Jeffrey B. Cohen, outside counsel who provided legal advice to the Employee Benefit Plan Committee concerning the appeals and pending litigation. The e-mails and attachments include proposed draft responses and legal advice from Marianne Culver.
>
> 4. Electronic files of Marianne Culver containing legal advice to the Boeing Pension Service Center concerning responses to plaintiffs' claims for retiree medical benefits. The electronic files contain counsel's legal research and draft responses.

The documents in Culver's electronic files were created by Culver in June and August 2007. The documents in the electronic files of outside counsel were created between November 27 and December 13, 2007.

**C. Analysis**

As noted above, Boeing asserts that the disputed documents are protected by the attorney-client privilege and/or the attorney work product doctrine. Plaintiffs concede that the communications satisfy the traditional elements of the attorney-client privilege.[9] However, plaintiffs argue that the "fiduciary exception" applies and that ERISA beneficiaries are entitled to discover the legal advice that guides a plan administrator in interpreting their eligibility for benefits. Boeing counters that the fiduciary exception does not apply where, as is the case here, the beneficiaries have already commenced litigation and the plan fiduciary retains counsel to defend itself against the beneficiaries. For the reasons set forth below, the court agrees that, under the unique circumstances of this case, the fiduciary exception does not negate the attorney-client privilege or work product doctrine.

The Honorable U.S. Magistrate Judge Waxse explained the fiduciary exception in Lewis v. Unum Corporation Severance Plan, 203 F.R.D. 615 (D. Kan. 2001):

> In the ERISA context, the fiduciary exception comes into play when an employer who is the administrator for an ERISA plan invokes the attorney-client privilege against the plan beneficiaries. This fiduciary exception derives from the principle that when an attorney advises a plan fiduciary about the administration of an employee benefit plan, the attorney's client is not the fiduciary personally but, rather, the

---

[9] The essential elements of the attorney-client privilege under federal law are "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau, 150 F.R.D. 193, 196, n. 4 (D. Kan. 1993). The elements of the federal common law are identical to the elements under Kansas law.

> trust's beneficiaries.
>
> Given these parameters, courts generally have held that although the attorney-client privilege does not apply when an attorney advises a plan fiduciary about the administration of an employee benefit plan, the attorney-client privilege does apply when an attorney advises a plan fiduciary regarding issues that do not involve actual administration of the plan. ***When an administrator is required to justify or to defend against a beneficiary's claims made because of an act of plan administration, the administrator does not act directly in the interests of the disappointed beneficiary but in his own interests or in the interests of the rest of the beneficiaries.***
>
> Thus, the case authorities mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration ***and where the advice clearly does not implicate the trustee in any personal capacity,*** the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries ... the attorney-client privilege remains intact.

Id. at 619-20 (case citations and internal quotes omitted, emphasis added). The court agrees with and adopts Judge Waxse's summary of the law concerning the fiduciary exception in the ERISA context.

In this case the plan fiduciary retained counsel for legal advice because plaintiffs had already commenced litigation and alleged that the Committee had breached its fiduciary duties to the beneficiaries. Amended Complaint, Doc. 3, p. 27, filed March 29, 2007 (Case No. 07-1043). Because the beneficiaries initiated a suit asserting claims directly against the Committee, "the legal fiction of the 'trustee as a representative of the beneficiaries' is dispelled." See United States v. Mett, 178 F.3d 1058, 1065 (9th Cir. 1999). The legal advice was sought because of the pending litigation and claims of personal liability; thus, the

attorney-client privilege remains intact. Lewis at 619.

Plaintiffs argue that they seek to discover ***only*** advice on plan interpretation, not advice relating to a fiduciary's personal liability. This argument is not persuasive. The Committee secured the services of legal counsel ***because*** the litigation filed against it included a claim that the Committee breached its fiduciary duty to plaintiffs. As noted above, the legal fiction that the trustee is a representative of the plaintiff beneficiaries disappears after claims are asserted directly against the Committee. Equally important, the implied suggestion that counsel could provide meaningful legal advice to the Committee concerning personal liability without evaluating the language of the plan is simply not persuasive.[10] Accordingly, the communications with (1) in-house counsel in June and August 2007 and (2) outside counsel in November and December 2007 are protected by the attorney client privilege. Counsels' drafts and legal research during this period are also protected by the attorney work product doctrine.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 227)** is **DENIED** and Boeing's motion for a protective order **(Doc. 282)** is **GRANTED.**

---

[10] Plaintiffs rely heavily on Lewis to support their claim for production. However, the legal communication ordered produced in Lewis was both "pre-decision" and "pre-litigation." Most significantly, the claim in Lewis was limited to a request for benefits under the plan. The circumstances in this case are materially different from those presented in Lewis because these consolidated lawsuits include a count against the Committee personally for breach of fiduciary duty.

**Plaintiffs' Motion to Amend the Scheduling Order (Doc. 263)**

The parties proposed and the court approved on May 1, 2008 a "phased" approach to discovery related to liability. (Doc. 91). Specifically, the first phase of discovery was limited to the "Harkness" class liability issues to be followed by a second phase concerning the claims of the "McCartney" plaintiffs. Plaintiffs move to amend the scheduling order to allow discovery concerning the McCartney plaintiffs' claims and Boeing opposes the motion. For the reasons set forth below, plaintiffs' motion shall be GRANTED IN PART.

The parties proposed that discovery be conducted in phases based on their belief that resolution of certain issues related to the Harkness plaintiffs would be "the most efficient and sensible way to proceed with this litigation." Consistent with the parties' recommendations, the court established (1) an August 31, 2008 date for the completion of phase one discovery, (2) a November 14, 2008 deadline for plaintiffs to file a motion for summary judgment concerning liability issues related to the Harkness plaintiffs, and (3) a December 23, 2008 deadline for defendants to file any related motions for summary judgment. Phase One Scheduling Order, Doc. 91. However, the parties' ambitious goal of filing summary judgment motions by November and December of 2008 has been disrupted by numerous requests for extensions of time to confer and more recently by a series of discovery motions.[11] The net result is that discovery concerning the Harkness plaintiffs has yet to be completed and no summary judgment motions have been filed.

---

11 The extensions of time served a useful purpose and allowed the parties time to resolve a considerable number of discovery matters without court involvement.

Plaintiffs argue that delays in resolving the Harkness plaintiff liability claims have exceeded the time frame originally contemplated by plaintiffs and that the scheduling order should be amended so that discovery concerning the McCartney plaintiffs might move forward. Boeing and Spirit argue that (1) plaintiffs agreed to the phased discovery approach and (2) allowing discovery to proceed on the McCartney claims will further delay resolution of the case. Boeing also argues that it agreed to class certification for the Harkness plaintiffs based on its understanding that discovery would be conducted in phases.

The argument that the scheduling order should not be amended because plaintiffs' agreed to phased discovery in the spring of 2008 is not persuasive. As noted above, the phased approach to discovery was approved by the court with the expectation that the Harkness issues would be resolved relatively early and ultimately shorten the time frame for resolving all claims in the case. However, the original schedule has been amended repeatedly at the request of ***all*** parties and discovery concerning the Harkness claims has not been completed. The original agreement between the parties concerning phased discovery has not achieved an expedited resolution of the case. The court will not persist in a case management plan that has not fulfilled the desired expedited resolution of the case.

Boeing and Spirit's argument that allowing discovery related to the McCartney claims will further delay resolution of the case is similarly not persuasive. To avoid additional delays related to the Harkness claims the court will (1) address the pending discovery motions related ***only*** to the Harkness claims and (2) re-establish deadlines for the completion of any remaining Harkness discovery and the filing of summary judgment motions. A

separate timetable will be adopted for discovery issues related to the McCartney claims. This approach will ensure that the summary judgment motions concerning the Harkness claims are timely filed and also that discovery related to the McCartney claims moves forward.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to amend the scheduling order with respect to the McCartney claims **(Doc. 263)** is **GRANTED IN PART.** All pending discovery requests concerning the McCartney claims are **DENIED WITHOUT PREJUDICE**. The parties shall confer and submit a proposed schedule for the completion of discovery concerning ***all*** issues related to the McCartney claims by **December 7, 2009.**

**IT IS FURTHER ORDERED** that discovery concerning the "McCartney claims" is stayed pending entry of a scheduling order addressing their claims.

**Plaintiffs' Motion to Compel Document Production (Doc. 229)**
**Boeing's Motion for a Protective Order (Doc. 293)**

Plaintiffs move to compel 112 items listed on Boeing's privilege log.[12] Boeing opposes the motion and moves for a protective order, arguing that a large percentage of the documents are internal labor-relations strategies and therefore should be protected by Fed. R. Civ. P. 26(c)(1)(G). Boeing also asserts that certain documents are protected by the attorney-client privilege and/or work product doctrine.

---

12 Plaintiffs originally moved to compel 120 documents but Boeing subsequently produced 8 of the requested documents.

Rule 26(c)(1)(G) provides:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> * * *
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way.

Boeing argues that the court should enter a protective order concerning Boeing's internal bargaining-strategy documents because disclosure of the documents would cause undue harm to Boeing in future contract negotiations with the union plaintiffs.

Although characterized as a Rule 26(c) motion for a protective order, Boeing's motion, if granted, would result in the creation of a "bargaining-strategy" privilege.[13] However, there is no controlling precedent recognizing such a privilege. Equally important, the court is not persuaded that Boeing has carried its burden of showing good cause for a Rule 26(c)(1)(G) order precluding discovery of the documents. There is no dispute that the requested documents are relevant to allegations in this case and Boeing has not shown "annoyance, embarrassment, oppression, or undue burden or expense" justifying the requested protective order.

---

13 Boeing repeatedly contends that it is not seeking recognition of a "privilege" but rather seeks a protective order under Rule 26(c). However, Boeing essentially argues that discovery should not be permitted because the disclosure of "negotiating strategies" will have an adverse impact on the employer/union relationship and future negotiations. It is not clear how disclosure of the specific documents in this case might affect future negotiations. Moreover, Boeing's arguments suggest general policy reasons supporting recognition of a privilege rather than a specific showing of "annoyance, embarrassment, or oppression" for a Rule 26(c) protective order.

With respect to Boeing's assertion that certain documents are protected by the attorney-client privilege, plaintiffs concede that they

> do not request production of <u>any</u> items or subparts of items that Boeing has labeled as attorney-client privileged. Moreover, Plaintiffs do not seek documents that are identified on the privilege log as having been prepared for litigation at the direction of a lawyer.

(Doc. 230, p. 6-7)(emphasis in original). Accordingly, plaintiffs' motion to compel any of the 112 documents listed by Boeing as protected by the attorney-client privilege is DENIED.

The parties' remaining arguments relate to whether the work product doctrine is applicable to certain documents and, if so, whether plaintiffs have shown "substantial necessity" for production. To assist the court in evaluating the work product issues, Boeing shall produce the documents for an *in camera* review on or before **November 10, 2009.**[14] The rulings on the work product issues are reserved pending an *in camera* review of the documents.

**The Committee's Motion for a Protective Order (Doc. 233)**

Plaintiffs served Rule 30(b)(6) deposition notices to the Boeing Employee Benefit Plan Committee requesting the designation of one or more persons to testify regarding 13 subjects and to produce all documents related to the subjects. The Committee objects to the

---

[14] The parties shall confer and clarify exactly how many documents remain in dispute. As noted above, documents designated as protected by the attorney-client privilege are no longer in issue. Additionally, the court has rejected Boeing's request for a protective order concerning documents designated as "bargaining strategy."

notice and seeks a protective order because the deposition notice: (1) seeks discovery outside the scope of phase one discovery; (2) is an untimely request for written discovery; (3) seeks information beyond the scope allowed by ERISA; (4) seeks attorney-client and work-product protected information; and (5) is unreasonably burdensome. The arguments and rulings are set forth below.

**1. Phase One Discovery**

The Committee argues that the topics listed in the deposition notice go beyond the scope of phase one discovery (limited to the Harkness plaintiffs) because the topics cover issues related to the McCartney plaintiffs. Plaintiffs counter that "the treatment of the McCartney plaintiffs . . . is plainly relevant to the treatment of the Harkness plaintiffs." However, plaintiffs do not explain "how" their discovery requests are relevant to the Harkness class liability issues. Equally troubling, plaintiffs' topics are written in broad terms, making it difficult to determine whether the deposition questions will be relevant to the Harkness class liability issues or relevant only to the McCartney plaintiffs' claims.

The Committee carries the burden of persuading the court that a protective order is warranted and the court agrees that discovery which has ***no relevance*** to the Harkness liability claims is not permitted at this time. However, plaintiffs are entitled to conduct discovery that ***is*** relevant to the Harkness liability issues even if it touches in some fashion on the McCartney claims. The difficulty is that the record is too limited to permit a determination whether a specific deposition question and answer is relevant to the Harkness

liability issue. Accordingly, although the court declines to enter a specific protective order, plaintiffs are admonished that discovery at this time is limited to information related to Harkness class liability issues.

**2. Untimely Requests for Written Discovery**

The most recent amended scheduling order provides that all written discovery must be commenced or served in time to be completed by March 30, 2009 (Doc. 169). Notwithstanding this deadline, plaintiffs' deposition notice includes a request for the production of all documents related to the topics listed in the Rule 30(b)(6) notice. The Committee seeks a protective order, arguing that the request for document production in the deposition notice (served May 26, 2009) is untimely. The court agrees.[15] Accordingly, the Committee's request for a protective order is GRANTED and the Committee need not comply with the document requests contained within the deposition notice.

---

[15] Plaintiffs argue that Boeing's deposition notices contained similar requests for document production; therefore, plaintiffs should similarly be allowed to seek document production with their deposition notices. Had plaintiffs objected to Boeing's untimely document requests the court would have similarly granted plaintiffs a protective order. However, plaintiffs filed no motion for a protective order.

Plaintiffs also argue that the Committee is required to produce any additional documents responsive to earlier production requests. Clearly, the Committee is obligated to supplement its document production requests pursuant to Rule 26(e). To avoid any confusion or delay, the Committee shall supplement its document production with any additionally responsive documents by **November 30, 2009.** Thereafter, ***all*** defendants shall supplement their document production responses (if necessary), at a minimum, every 15 days.

**3. ERISA Administrative Record**

The Committee argues that, with the exception of discovery concerning the plan administrators' conflict, discovery in a suit for ERISA benefits is limited to the administrative record; therefore, the court should enter a protective order limiting the Rule 30(b)(6) deposition topics to possible conflicts the plan administrator might have with the plan or the beneficiaries. This argument is rejected. This case involves multiple claims rather than a single request for the payment of benefits as suggested by the Committee.[16] Moreover, a number of topics challenged by the Committee arguably involve the Committee's conflict with the plan's beneficiaries. For example, Topic 5 asks for a Rule 30(b)(6) deponent on "the handling of, and decision-making on, inquiries, claims, and appeals made to the Plans by members of the Harkness Class." Deposition testimony that ***Boeing*** had any involvement in the Committee's handling of claims or decision-making process is relevant to the conflict issue. Additionally, the Committee apparently determined that the individual plaintiffs were not entitled to benefits before plaintiffs even submitted their requests for benefits. The predetermination of claims raises issues concerning procedural irregularities which plaintiffs are entitled to investigate through discovery. Accordingly, the Committee's request for a protective order based on the "administrative

---

[16] The Committee attacks the validity of a number of plaintiffs' claims. However, these arguments go to the merits of plaintiffs' claims and should be asserted in an appropriate dispositive motion. The Committee has had ample opportunity to file a motion to dismiss or for summary judgment and the court will not resolve the merits of plaintiffs' claims in a motion for a protective order concerning deposition notices.

record" is denied.

**4. Attorney-client Privilege and Work Product**

The Committee seeks a protective order precluding plaintiffs from "inquiring into communications between the Committee and its legal counsel." The difficulty with this argument is that the communications for which the Committee seeks protection have not been adequately defined.[17] Accordingly, the court declines to enter a protective order concerning this argument. However, the Committee may assert privilege objections during the Rule 30(b)(6) deposition and instruct the witnesses not to answer on the basis of the asserted privilege.[18]

**5. Unreasonable Burden**

The Committee argues that plaintiffs' list of topics in the deposition notice are unreasonably burdensome, overly broad, and inefficient. For example, Topic 1 seeks testimony about "the employee-benefit treatment of Boeing employees or former employees affected by Boeing's divestiture at Spokane, Wash.; Kent, Wash; Corinth, Tex.: Irving, Tex.; and St. Louis, Mo., and the benefit plans that are or were in place for Boeing employees in

---

17 The court is even less certain what "work-product" matters are included in the Committee's argument for a protective order.

18 The parties repeat their earlier arguments concerning the "fiduciary exception." The court's earlier ruling on the fiduciary exception should guide the parties in their approach to deposition questions involving attorney-client communications.

those divestitures." The Committee objects that plaintiffs have not articulated what is meant by "employee benefit treatment" or which particular "benefit plans" at these facilities they intend to cover. The court agrees that plaintiffs need to be more specific in articulating the "benefit plans" and "treatment" they seek to cover during the deposition. Accordingly, Boeing's motion for a protective order concerning Topic 1 is granted in part and plaintiffs shall refine their request.[19]

The Committee similarly argues that Topic 5 (the handling of the administrative claims by the Harkness plaintiffs) and Topic 7 (the guidelines regarding the interpretation of the Plan and collective bargaining documents) are overly broad, inefficient, and unreasonable. The court is not persuaded that the Committee has carried its burden of showing that the requests are overly broad, inefficient, or unreasonable; thus, the request for a protective order concerning Topics 5 and 7 is denied.

Topic 10 requests the factual and legal basis for the claims, denials, allegations, and defenses alleged in the answer to the third amended complaint. The Committee argues that it should not be required to provide a representative to speak ***on behalf of other defendants*** about the Committee's legal positions. The court agrees and the Committee is only required to provide a Rule 30(b)(6) witness to testify about ***the Committee's*** claims, denials, and defenses.

---

19 The Committee also asserts in a single sentence that "the Boeing defendants have already answered specific interrogatories directed toward this subject." The argument that interrogatory answers ***have already been provided*** is inconsistent with the Committee's argument that Topic 1 is not set out with sufficient specificity.

Topics 11-13 request deposition testimony on the "substance and basis" of interrogatory answers (Topic 11), the "substance and basis" of the Committee's responses to plaintiffs' document requests (Topic 12), and the "identity, origin, location, content and significance of all documents identified in your Rule 26 initial disclosures" and responses to document production (Topic 13). These topics are unreasonable on their face. The discovery responses in this case are voluminous and Topics 11-13 lack the "reasonable particularity" required by Rule 30(b)(6). Accordingly, the Committee's request for a protective order concerning Topics 11-13 is granted.[20]

The Committee also requests a general protective order precluding plaintiffs from asking questions during the deposition as to matters involving actions, decisions, or responsibilities of Boeing. The court declines to enter such an order.

**IT IS THEREFORE ORDERED** that the Committee's motion for a protective order **(Doc. 233)** is **GRANTED IN PART**, consistent with the ruling set forth above.

**IT IS FURTHER ORDERED** that any Rule 30(B)(6) depositions related to the Committee shall be served and completed by **December 15, 2009.**

---

20 Plaintiffs argue that the "Boeing defendants" served deposition notices listing topics with similar language. However, plaintiffs filed no motion for a protective order concerning Boeing's deposition notices. Moreover, the court should not have to remind the parties that "two wrongs don't make a right."

## Boeing's Motion for a Protective Order (Doc. 237)

Plaintiffs served defendant Boeing with Rule 30(b)(6) deposition notices requesting the designation of one or more persons to testify regarding 18 subjects and to produce all documents related to the subjects.[21] Similar to the Committee's objections discussed above, Boeing moves for a protective order and argues that the deposition notice: (1) seeks discovery outside the scope of Phase One discovery; (2) is an untimely request for written discovery, and (3) is unreasonably burdensome. Boeing's arguments are discussed in greater detail below.

### 1. Phase One Discovery

Boeing argues that a protective order should be granted because plaintiffs seek discovery "far beyond issues related to the Harkness class plaintiffs." The parties' arguments are similar to those concerning the Committee's motion for a protective order. The court adopts and incorporates its rulings discussed above concerning Phase One discovery and declines Boeing's request for a protective order based on the scope of Phase One discovery.

### 2. Untimely Requests for Written Discovery

The deposition notice contains a request for the production of all documents related to the topics listed in the notice. Boeing moves for a protective order, arguing that the

---

[21] In the context of this motion, "Boeing" refers to the "Boeing Company," a single defendant.

request for the production of documents is untimely. The court agrees. The most recent amended scheduling order provides that all written discovery must be commenced or served in order to be completed by March 30, 2009. (Doc. 169). Accordingly, Boeing's request for a protective order is GRANTED and Boeing need not comply with the document requests contained within the deposition notice.[22]

### 3. Unreasonable Burden

Boeing argues that the plaintiffs' list of topics in the deposition notice are unreasonably burdensome, overly broad, and inefficient. For example Topic 4 requests a corporate representative to testify about Boeing's handling and treatment of employment issues in divestitures in Washington, Texas, and Missouri and any related communications that occurred with the unions. Topic 9 requests similar information concerning "employment issues" related to the Wichita division sale. Boeing complains that the phrase "treatment of employment issues" is not sufficiently defined. The court agrees and Boeing's request for a protective order concerning these two topics is GRANTED. However, plaintiffs are granted leave to refine the wording of the two topics in order to provide "reasonable particularity."

---

[22] Boeing remains obligated to supplement its responses to earlier production requests pursuant to Rule 26(e) and shall supplement its document production with any additionally responsive documents by **November 30, 2009.** Thereafter, ***all*** defendants shall supplement their document production responses (if necessary), at a minimum, every 15 days.

Topics 3 and 6 request a corporate representative to discuss the sale of the Wichita division to Spirit and any communications with Spirit concerning the sale. Boeing complains that the two requests are overly broad, covering issues well beyond employment and pension issues. The court agrees. The sale of the Wichita division to Spirit was a complex transaction covering a variety of issues. Topics 3 and 6 are overly broad and Boeing's request for a protective order concerning these two topics is GRANTED.

Topics 1 and 2 seek testimony concerning Boeing's collective bargaining, bargaining agreements, and communications with the unions representing employees in Wichita. The court agrees that plaintiffs should be more specific and limit their inquiry to issues related to the Harkness class plaintiffs. Open ended requests concerning ***any*** bargaining matters and/or communications are simply too broad. Accordingly, Boeing's motion for a protective order concerning Topics 1 and 2 is GRANTED. However, plaintiffs are granted leave to refine and narrow their requests.

Topic 8 requests a corporate representative to testify concerning Boeing's "employment treatment" of the individuals who were Boeing employees in Wichita in 2005 and Boeing's position on their entitlement to benefits under the plans. As presently worded, this request is overly broad. However, plaintiffs may revise and refine their request to the plan benefits sought by the Harkness class plaintiffs.

Topic 12 seeks information concerning retention, layoffs, rehiring, and recall of employees to work for Boeing in Wichita. The request is overly broad on its face. Plaintiffs have made no showing that rehiring and recall matters relate to the Harkness class claims.

Accordingly, Boeing's request for a protective order concerning Topic 12 is GRANTED.

Topic 13 seeks testimony concerning the pension plans, their administration and governance, and any amendments to the plans. The court rejects Boeing's argument that it is being asked to provide testimony for other defendants. However, the court agrees that the request lacks the required specificity required by Rule 30(b)(6); accordingly, Boeing's request for a protective order concerning Topic 13 (as presently drafted) is GRANTED. Similar to the other deposition topics, plaintiffs are granted leave to refine their topic to address (1) more specific plan issues (2) during a specific period of time.

Boeing objects to Topics 15-18 on the grounds that it should not be required to provide a corporate designee to testify on behalf of other defendants. This argument is rather peculiar. Rule 30(b)(6) only requires Boeing to provide corporate representatives to testify on Boeing's behalf and Boeing is not obligated to provide a corporate designee to testify ***on behalf of other defendants***. This is the only argument raised by Boeing concerning Topics 15-18 and Boeing's request for a protective order is otherwise DENIED.

**IT IS THEREFORE ORDERED** that Boeing's motion for a protective order concerning plaintiffs' Rule 30(b)(6) deposition notice **(Doc. 237)** is **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings expressed herein.

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider

is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 3rd day of November 2009.

S/ Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge