# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SOCIETY OF PROFESSIONAL )
ENGINEERING EMPLOYEES )
IN AEROSPACE, IFPTE LOCAL )
2001, AFL-CIO, et al., )
                 )
         Plaintiffs, )
                 )
v. )      **Case No. 05-1251-MLB**
                 )
THE BOEING COMPANY, )
                 )
         Defendant. )
_____)
                 )
DAVID A. HARKNESS, on behalf of )
himself and all others similarly )
situated, et al., )
                 )
         Plaintiffs, )
                 )
v. )      **Case No. 07-1043-MLB**
                 )
THE BOEING COMPANY, et al., )
                 )
         Defendants. )
_____)

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

     1. Motions for Extensions of Time (Doc. 242, 334);

     2. Plaintiffs' Motion to Compel (Doc. 229);

3. Boeing's Motion for a Protective Order (Doc. 293);

4. Boeing and Spirit's Motion for a Protective Order (Doc. 302);

5. Boeing's Motion for a Protective Order (Doc. 323); and

6. Plaintiffs' Motion to Compel Documents (Doc. 339).

The rulings are set forth below.

## Nature of the Cases

The genesis of these consolidated cases is the sale of Boeing's commercial airplane division in Wichita, Kansas to Spirit AeroSystems, Inc.[1]  Plaintiffs are two labor unions and two groups of former Boeing employees suing on behalf of themselves and others similarly situated.   Defendants are Boeing, Spirit, and various employee benefit plans.   Highly summarized, plaintiffs seek to: (1) enforce collective bargaining agreements between the unions and Boeing and (2) secure favorable rulings concerning pension and health benefits for certain employees between ages 49 and 55.[2]  The circumstances concerning the asset sale to Spirit and the nature of the claims have been described in prior opinions and will not be repeated except where necessary for context in addressing individual motions.  See, e.g., Report and Recommendation, Doc. 57.

---

[1]     Spirit AeroSystems, Inc. was previously known as Mid-Western Aircraft Systems, Inc.  For editorial clarity and consistency, the court refers to the new company as Spirit.

[2]     Boeing and various employee benefit plans frequently refer to themselves as the "Boeing defendants."  Again, for editorial clarity, the court will refer to the "Boeing defendants" as "Boeing."

## Motions for Extensions of Time (Doc. 242, 334)

The parties jointly move for an order extending the close of discovery. (Doc. 242). Specifically, the parties request that the discovery deadline be extended to a date six weeks after the court rules on the pending discovery motions. (Doc. 242). Because the pending discovery disputes materially affect the completion of discovery, the parties' motion shall be GRANTED.

**IT IS THEREFORE ORDERED** that the motion for an extension of the discovery cutoff date **(Doc. 242)** is **GRANTED.** The deadline for the completion of discovery will be established after the court resolves the pending discovery motions.

Plaintiffs also move for an extension of time to file a motion to compel discovery related to plaintiffs' first and third document production requests. (Doc. 321). Boeing does not object as long as the motion to compel is limited to the issues raised in plaintiffs' July 21, 2009 "conferral letter." Plaintiffs stand by their July 21 letter with two caveats. First, plaintiffs had not yet received Boeing's response to the July 21 conferral letter; therefore, plaintiffs were uncertain what issues might surface during the conferral process. Second, defendants represent that they produced "approximately 275,000 pages of written material; however, plaintiffs only received 20,000 pages of Bates-stamped pages from Boeing and 17,000 pages from Spirit. Plaintiffs ask for an opportunity to resolve this apparent discrepancy.

The court declines to impose limitations at this time concerning issues the parties have apparently not discussed. Plaintiffs' motion shall be GRANTED with the understanding that

the issues in the motion to compel will involve those matters discussed in plaintiffs' July 21 letter. Plaintiffs may raise "other" issues in their motion to compel on a showing of good cause.

**IT IS THEREFORE ORDERED** that plaintiffs' motion for an extension of time to file a motion to compel related to plaintiffs' first and third document production requests **(Doc. 334)** is **GRANTED.**

**Plaintiffs' Motion to Compel Document Production (Doc. 229)**
**Boeing's Motion for a Protective Order (Doc. 293)**

Plaintiffs move to compel certain items listed on Boeing's privilege log. (Doc. 229). Boeing opposes the motion and moves for a protective order, arguing that the documents should be protected from disclosure based on (1) the attorney-client privilege, (2) the work product doctrine, and/or (3) Fed. R. Civ. P. 26(c)(1)(G). The Rule 26(c)(1)(G) argument is based on Boeing's claim that certain documents were confidential labor-relations strategies and should be protected from disclosure. In an order filed November 11, 2009 the court (1) rejected Boeing's request for a Rule 26(c) protective order concerning labor-relation materials, (2) sustained Boeing's claim of attorney-client privileged materials, and (3) ordered that the documents designated as "work-product" be submitted for an *in camera* review. Memorandum and Order, Doc. 348, pages 13-15.

The remaining issues concerning plaintiffs' motion to compel and Boeing's motion for a protective order are (1) whether the work product doctrine is applicable to certain

documents and, (2) if so, whether plaintiffs have shown "substantial necessity" for production. Having considered the parties' arguments and reviewed the documents *in camera*, the court is satisfied that the documents qualify for protection under the work product doctrine.[3] Unquestionably, the documents were prepared when the threat of litigation was both real and imminent. <u>Raytheon Aircraft Co. v. U.S. Army Corps Of Engineers</u>, 183 F. Supp. 2d 1280, 1288 (D. Kan. 2001). Plaintiffs' counter-argument that the documents are not protected by the work product doctrine because they were created "in the ordinary course of business" is not persuasive.[4] The documents in question were prepared after Boeing received threats of litigation and unfair labor charges concerning the treatment of employees ***in the course of the sale of the Wichita facility to a new company***. The sale of the Wichita facility and the treatment of employees raised issues that were decidedly **not** "in the ordinary course of business." When placed in proper context, the court is satisfied that the documents were

---

[3] The materials were submitted to the court on a computer disc with a cover letter. Plaintiffs objected that Boeing's letter (1) included the submission of an attorney-client communication "for context" and (2) improperly placed the documents in "categories" on the disc. With respect to the issue of "categories," the court found Boeing's attempt to organize the documents into categories unhelpful and confusing. The documents were reviewed and analyzed in the same order in which they were listed on the privilege log.

No consideration was given to the attorney-client communication "provided for context" or to any other statements in the parties' respective letters to the court. The rulings are based on the arguments presented in the parties' briefs.

[4] Plaintiffs assert that a company's negotiations with a collective bargaining unit arises "in the ordinary course of business." This is an overly generous view that ignores the circumstances and context in which documents are created after the threat of litigation is real and imminent. The application of the work product doctrine is determined on a case-by-case basis.

prepared in anticipation of litigation rather than in the ordinary course of business.

Plaintiffs also argue that Boeing has asserted an improper blanket privilege and waived the work product doctrine. The assertion of an "improper blanket privilege" is summarily rejected. Boeing provided a privilege log individually listing each document, the name of the author(s) and recipient(s), the date of the document, and the reason the document was withheld. Plaintiffs' "waiver" argument is also summarily rejected because plaintiffs merely assert conclusory allegations that Boeing was somehow using the work product "as both a shield and a sword." Plaintiffs fail to establish that Boeing has waived the work product doctrine.

Alternatively, plaintiffs argue that the work product documents should be produced because plaintiffs have "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Again, plaintiffs' arguments are conclusory in nature and unpersuasive. Accordingly, Boeing's motion for a protective order concerning the 86 designated work product documents shall be granted and plaintiffs' motion to compel the same documents shall be denied.

**IT IS THEREFORE ORDERED** that Boeing's motion for a protective order concerning the designated work product documents **(Doc. 293)** is **GRANTED** and Plaintiffs' motion to compel those same documents **(Doc. 229)**is **DENIED.**

## Boeing and Spirit's Motion for a Protective Order (Doc. 302)

Boeing and Spirit jointly move for a protective order for the return and/or destruction of certain attorney-client privileged documents that were inadvertently provided to plaintiffs. (Doc. 302). Plaintiffs oppose the motion, arguing that Boeing lost the attorney-client privilege when it allowed Spirit access to Boeing computer servers containing the documents. As explained in greater detail below, the motion shall be DENIED.

## Background

Spirit sent a compact disc containing approximately 500 pages of "additional" documents to plaintiffs with a copy to Boeing on Friday, May 29, 2009.[5] On Monday morning, June 1, Boeing reviewed the disc and discovered that Spirit had included an e-mail thread containing Boeing's attorney-client privileged information—the same e-mail thread that Boeing had previously identified on its privilege log. Boeing immediately contacted plaintiffs and attempted to invoke the clawback provision in the parties' agreed protective order. Plaintiffs refused to return the materials and Boeing and Spirit filed this motion to secure the return or destruction of the disc.[6]

The circumstances surrounding Spirit's possession of Boeing's e-mail thread are unusual and involve Boeing's sale of its Wichita commercial facility to Spirit. The sale was

---

[5] Spirit was supplementing an earlier response to plaintiffs' production requests.

[6] Spirit provided plaintiffs with a revised disc that redacted the attorney-client privileged e-mail thread on June 11, 2009.

a complex transaction, in part, because Boeing was conveying a substantial ongoing manufacturing operation in Wichita to a newly created company. The transaction was effectuated on June 16, 2005. Approximately 8,000 employees left work that day as Boeing employees and returned the next day as Spirit employees, performing the same work at the same work stations. To facilitate a smooth transition, Boeing and Spirit agreed that Boeing would provide e-mail services to the 8,000 employees until Spirit developed its own e-mail system. Under the agreement, former Boeing employees working for Spirit continued to use their same e-mail addresses (e.g., first.m.last@boeing.com) and accessed their e-mail accounts on Boeing's servers.

The handling of e-mail accounts was further complicated by plaintiffs' filing of unfair labor practice charges on April 26, 2005 and other threats of litigation. For example, Lawrence Williamson, an attorney, sent Boeing and Spirit a June 13, 2005 letter advising that a class action lawsuit would be filed based on age discrimination and requesting that all documents related to the "sale/merger" be preserved. Mr. Williamson also demanded that "Boeing [and Spirit] should immediately suspend any computer system purging activities that might cause the destruction of such evidence, and should monitor and control any destruction of documents until this matter is resolved."[7]

The e-mail "support period" lasted approximately one year and expired Monday, June 5, 2006. In anticipation of the expiration date, Spirit instructed its employees to preserve any

---

[7] Mr. Williamson filed his case on December 19, 2009. (Apsley v. Boeing, Case No. 05-1368). This case (No. 05-1251) was filed on August 8, 2005.

e-mail messages related to ongoing lawsuits.[8] During the weekend before the expiration date, Boeing's information technology specialists (1) copied the contents of the Spirit employees' electronic mailboxes, (2) saved the e-mail messages to a location with shared access, and (3) deactivated Spirit employees from Boeing's network. On Monday morning, June 5, 2006, Spirit relocated the files to a secure area to which Boeing had no access and reconfigured the accounts so that Spirit employees would have continued access to their e-mail messages but from a Spirit domain (e.g., @spiritaero.biz).

As a result of the sales agreement and transition process, Spirit and its employees had access to a large volume of e-mail messages created or received by "Boeing employees" before June 17, 2005. One of the e-mail files involved Jeff Clark, the former director of Employee/Union Relations for Boeing who currently works for Spirit. Prior to the June 16, 2005 sale date, Mr. Clark communicated by e-mail with Joan Clark, an in-house labor attorney for Boeing, for purposes related to legal advice. The Clarks' attorney-client communications were subsequently included in the disc forwarded by Spirit to plaintiffs on May 29, 2009 and are the subject of this motion. As noted above, Boeing and Spirit seek the return or destruction of the e-mail messages.[9]

Plaintiffs do not dispute that the e-mail communications between Jeff Clark and Joan

---

[8]

Spirit's instructions described eleven categories of documents.

[9]

Spirit and Boeing jointly move for the return of the e-mail messages. However, there is no evidence or suggestion that the messages are *Spirit's* attorney-client communications.

Clark constituted attorney-client privileged communications when originally created. Rather, plaintiffs argue that the privilege was lost "when Boeing allowed these particular documents to come into the hands of a third party [Spirit]." Boeing counters that it took reasonable steps to preserve the confidentiality of the privileged communications and that the disclosures were inadvertent. The parties' arguments are discussed in greater detail below.

## Analysis

The general rule in the Tenth Circuit is that "the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." In re Qwest Communications, 450 F. 3d 1179, 1185 (10th Cir. 2006), quoting United States v. Ryans, 903 F. 2d 731, 741 (10th Cir. 1990). Because confidentiality is key to the privilege, "voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." Qwest, quoting United States v. Bernard, 877 F. 2d 1463, 1465 (10th Cir. 1989).

The disclosure/waiver rule described in Qwest Communications has been modified by recent amendments to the federal rules of evidence and civil procedure. Fed. R. Civ. P. 26(b)(5)(B) provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specific information and copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it

> before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Evid. 502 provides that the attorney-client privilege is not waived when the disclosure occurs (1) *in a federal proceeding* or *to a federal agency* or (2) *in a state proceeding* and certain other conditions are satisfied. However, the protections in Fed. R. Evid. 502 do not apply to the present disclosure/waiver dispute because Boeing's *disclosures to Spirit* did not occur in the context of (1) a federal or state proceeding or (2) a court order.[10]

In support of its motion, Boeing cites the parties' agreed protective order (Doc. 92) and its clawback provision which provides:

> The inadvertent disclosure of privileged matter by a producing person or its counsel shall not constitute a waiver of any applicable privilege. A producing person that inadvertently discloses matter it claims to be covered by a privilege shall give notice promptly after discovery of the inadvertent disclosure that the matter is privileged. Upon receipt of such notice, if the person to whom such information was disclosed seeks to challenge the claim of privilege or lack of waiver, the notice and motion procedures set forth in paragraph 12, below, shall apply. If the claim of privilege is upheld, the matter shall be returned on request of the producing person or counsel.

The flaw in Boeing's clawback argument is that the protective order was approved and filed in May 2008, long after Boeing's June 2005 disclosure of the disputed e-mail to Spirit.[11]

---

[10]   Fed. R. Evid. 502 is set forth in Appendix A.

[11]   Boeing devotes considerable effort to its argument that *Spirit's production* of the privileged e-mail in *May 2009* was inadvertent. This argument is misguided because the determinative issue in this discovery dispute is whether Boeing's attorney-client privilege was waived when the e-mail messages were provided to a third party (Spirit) in *June 2005.*

-11-

More importantly, the clawback provision addresses "the ***inadvertent*** disclosure of privileged matter by a producing person or its counsel." Boeing's decision to allow Spirit access to the e-mail messages from June 2005 to June 2006 was most assuredly *not* "inadvertent." Rather it was intentionally done for reasons of business continuity and economic convenience. The protective order and the clawback provision simply do not apply to Boeing's disclosure of the e-mail messages to Spirit in June 2005.

Boeing also argues that it did not waive the attorney-client privilege because of "unique circumstances" and that it took reasonable steps to preserve the confidentiality of the privileged e-mail messages. Citing In re M & L Business Machine Co., 161 B.R. 689, 696 (D. Colo. 1993)(no waiver of privilege based on limited disclosure because of "unique circumstances"). According to Boeing, the "unique circumstances" were (1) the need for Spirit employees to have access to the Boeing e-mail messages in order to continue their work at the Wichita facility and (2) Boeing's implementation of a litigation hold.

Boeing's reliance on In re M & L Business Machine is misplaced and unpersuasive. The "unique circumstances" in that case involved a bank's disclosure of an attorney-client privileged communication to the U. S. Attorney for criminal prosecution purposes. The Honorable Judge Kane noted that the Tenth Circuit had yet to rule on the issue and ultimately adopted the doctrine of selective waiver. However, the Tenth Circuit subsequently rejected the selective waiver doctrine in In re Qwest Communications.[12]

---

[12]
   As noted, recently enacted Fed. R. Evid. 502 provides new rules concerning disclosures to a federal agency.

Boeing's argument that it took reasonable steps to protect the privileged e-mail messages from disclosure is also not persuasive. Boeing contends that it had only three options.[13] First, Boeing could have had its lawyers review each and every paper and electronic document and remove the privileged materials. Boeing rejected this approach because such an effort (1) was costly and considered unreasonable and (2) would have violated the litigation freeze.[14] The second option was to identify and remove every paper and electronic document and prohibit Spirit employees from accessing Boeing documents. This approach would have preserved the litigation freeze but Boeing rejected this option because it would have created "devastating consequences" for Boeing and Spirit's business continuity. The third option, which Boeing selected, was to provide Spirit with all of the e-mail messages

---

[13] The court is not persuaded that Boeing had **only three** options. However, because the "options" listed by Boeing are not determinative, the court will not extend this opinion with a discussion of alternative options.

[14] Boeing does not describe the steps taken in 2005 for a "litigation freeze" but does provide the instructions sent to employees in 2006 when Spirit prepared to take over e-mail services. The 2006 instructions merely told Spirit employees to not dispose of e-mails related to 11 categories of documents. The 2006 instructions, although appropriate, hardly suggest a sophisticated system of a "litigation freeze" designed to preserve the integrity of Boeing's hard drives and meta-data. The court expresses no opinion concerning the sufficiency of the 2005 "litigation freeze" but simply notes that the details of Boeing's actions concerning the preservation of records in 2005 are not entirely clear. Notwithstanding the 2005 "litigation freeze," Boeing allowed employees who no longer worked for Boeing to have access to Boeing records.

and then let the lawyers fight to preserve any claims of privilege.[15]

Unquestionably, Boeing was presented with a dilemma in how to handle e-mail files when negotiating with Spirit. Boeing made an educated business decision that it would not pre-screen the electronic files in order to preserve the confidentiality of attorney-client communications. However, Boeing presents no persuasive authority to support its contention that "unique circumstances" excuse the intentional disclosure of attorney-client privileged communications to a third party.[16] At best, Boeing proposes a "business decision" exception to the general rule that disclosure of privileged materials to a third party waives the privilege. In the absence of persuasive authority, the court is unwilling to recognize a "business decision" exception to the general rule.[17] Accordingly, Boeing and Spirit's motion for a

---

[15] Boeing's explanation of its options and decision to provide Spirit with unrestricted access to Boeing e-mail files conclusively establishes that the disclosures to Spirit in June 2005 were *not* "inadvertent." The disclosures were the result of a deliberate business decision to provide Spirit and its employees with access to Boeing's e-mail files.

[16] Contrary to Boeing's suggestions and reliance on In re M & L Business Machine, there is not a recognized catch-all doctrine of "unique circumstances" that excuses the intentional disclosure of privileged material to a third party. There are recognized exceptions for sharing privileged materials with third parties such as "joint defense" or "common interest" but Boeing has asserted no such relationship with Spirit. See, In re Qwest Communication International, 450 F.3d 1179, 1195 (10th Cir. 2006)(recognizing joint defense and common interest situations). As noted in this opinion, Fed. R. Evid. 502 also allows for the intentional disclosure without waiver under certain circumstances. However, the exceptions provided in Rule 502 do not apply to this factual situation.

[17] The storage of information in electronic format presents many practical and legal challenges as reflected in the comments to Fed. R. Evid. 502. Because of the complexity of issues, this court is reluctant to create ad hoc exceptions to the general rule of waiver or to the circumstances set forth in Rule 502. The business concerns and exception suggested by Boeing are better addressed through legislation or the rules making process.

protective order and return or destruction of the e-mail messages shall be denied.

**IT IS THEREFORE ORDERED** that the Boeing and Spirit's motion for a protective order **(Doc. 302)** is DENIED.

### Boeing's Motion for a Protective Order (Doc. 323)

On August 6, 2009, plaintiffs served Boeing with deposition notices for Malcolm Case and Thomas Easley. Boeing argues that two deposition notices are untimely and should be quashed. Plaintiffs contend that the depositions notices are timely served. As explained in greater detail below, Boeing's motion shall be DENIED.

Boeing's motion and the parties' debate concerning "timeliness" stem from events in May and June, 2009. On May 13, 2009 the court entered a revised scheduling order establishing a June 29, 2009 deadline for the completion of "Phase One" discovery depositions. (Doc. 209). On June 18, 2009, plaintiffs moved for an order extending the deadline to six weeks after the court ruled on the pending discovery motions. (Doc. 242). The court conducted a telephone conference with counsel on June 25, 2009 to discuss the motion and the status of discovery.

The court expressed its general intent to grant the motion during the conference call. However, Boeing argues the plaintiffs agreed during the call that the extension of time would apply only to (1) deposition notices that had already been served and (2) deposition notices served by June 29, 2009. Plaintiffs dispute Boeing's recollection of the conference call and deny there was any agreement to limit the extension of time to depositions noticed by June

29, 2009.

Unfortunately, the June 25 conference was conducted without the benefit of a formal record and the court's notes and recollection are simply inadequate to resolve the differences in the parties' respective versions of the call. However, the court's general intent was to grant plaintiffs' motion (Doc. 242) to extend the discovery deadline pending resolution of the various discovery motions.[18] Under the circumstances, Boeing's timeliness argument is not persuasive; therefore, Boeing's motion shall be DENIED.

**IT IS THEREFORE ORDERED** that Boeing's motion for a protective order and to quash **(Doc. 323)** is **DENIED.**

### Plaintiffs' Motion to Compel Documents (Doc. 339)

Plaintiffs move to compel Boeing to produce documents responsive to plaintiffs' production requests. Highly summarized, the motion presents two discovery controversies: (1) production of documents Boeing "knows about," and (2) documents in the possession of Boeing's in-house plan administrator.[19] The parties' arguments are set forth in detail below.

---

[18] Boeing shows no prejudice in allowing these two additional depositions and objects solely on the basis of timeliness.

[19] Plaintiffs filed a notice that parts II and III of their motion to compel have been withdrawn. (Doc. 352). Accordingly, the court addresses only the two remaining discovery disputes in the motion.

**1. Documents Boeing "Knows About"**

Plaintiffs served their First Request for Production of Documents on Boeing on June 3, 2008 and asked for sixty-three categories of documents. Boeing (1) agreed to "produce responsive documents **we specifically know about**" and (2) also proposed an electronic search protocol for a limited number of Boeing employees to provide "the relevant information plaintiffs think they need, in a cost-effective and non-burdensome manner." Boeing's June 25, 2008 Letter, Doc. 340-9 (emphasis added). Plaintiffs initially objected to Boeing's suggested search protocol and the parties conferred. Ultimately, the plaintiffs agreed to a search protocol but specifically reserved the right to seek documents requested in their First Request for Production of Documents.

The search protocol did not produce certain documents plaintiffs expected to receive. Plaintiffs then served a Third Request for Documents asking for the following categories of documents:

> Request For Production No. 1:
>
> To the extent not encompassed by Plaintiffs' previous requests for production of documents, all documents concerning communications within, between or among any Boeing Defendant(s) concerning the decision to transfer the pension assets and liabilities for Union-Represented Employees to a purchaser in connection with a divestiture of the Wichita Plant, from the time when such a transfer was first raised by anyone as a potential course of action through the date of the actual transfer of the pension assets, **including without limitation all documents concerning any consideration and/or negotiations that led up to the decision.**

<u>Request For Production No. 2:</u>

> To the extent not encompassed by Plaintiffs' previous requests for production of documents, all documents concerning communications between or among any or all of the Boeing Defendant(s) and Spirit concerning the agreement to transfer the pension assets and liabilities for Union-Represented Employees to Spirit in connection with a divestiture of the Wichita Plant, **including without limitation all documents concerning any negotiations that led up to the agreement.**

Doc. 340-15 (emphasis added). Boeing refused to produce any additional documents responsive to the Third Production Request.

Plaintiffs move to compel, arguing that Boeing has refused to produce "all documents **of which they are aware** that are responsive to plaintiffs' requests." Doc. 340. p. 17. Boeing counters with a description of its efforts to collect, review and produce documents to date and argues that the request for "all documents known to Boeing" would require a search of "the e-mail and paper files of 4,630 Boeing employees who are known to have participated in the Wichita sale and a review of literally millions of pages of documents that were created in conjunction with the sale." Doc. 345, p. 3. Boeing contends that such a search is unduly burdensome.

The phrase "including without limitation *all* documents *concerning any* negotiations that led up to the agreement" in plaintiffs' Third Production Request is overly broad on its face because it covers the entire spectrum of documents related to Boeing's sale of its Wichita

facility.[20]  The court rejects the use of this broadly worded phrase given the complexity of the sales transaction.

Boeing's argument that plaintiffs' requests are unduly burdensome because they would require a search of the electronic and paper files of 4,630 Boeing employees is rejected because plaintiffs are not proposing such a search.  Rather, plaintiffs have proposed that "no more than 20 or such agents should be asked what documents they personally know about that are responsive to our document requests."  Doc. 349, p. 7.  Additionally, plaintiffs have proposed a revised list of search terms.  The court is satisfied that an inquiry and/or search of the files of 20 key people is not "unduly burdensome."

Accordingly, plaintiffs' motion to compel is granted in part.  Boeing shall search the paper and electronic files of the "key people" listed in plaintiffs' September 11, 2009 letter to Boeing.  (Doc. 340-22).  The electronic searches shall be conducted with the additional search terms proposed by plaintiffs.  (Doc. 340-22).  Boeing shall also ask the group of "key people" whether they are personally aware of documents responsive to the First and Third Production Requests.

## 2. Documents in the Possession of Boeing's In-House Plan Administration Panel

Plaintiffs also seek an order compelling responsive documents in the possession of its

---

[20]

For example, plaintiffs' request would include documents addressing environmental issues and risks.  Environmental matters have no relevance to the claims in this case.

in-house plan administrator. Specific production requests are not mentioned by either party; instead, the parties raise the legal issues set forth below.

Boeing argues that plaintiffs are not entitled to any discovery from **Boeing Employee Benefits Plan Committee** beyond the administrative record, i.e., the materials compiled by the administrator in the course of making its decision. The identical argument was raised by Boeing and rejected by the court in a November 3, 2010 <u>Memorandum and Opinion</u>. (Doc. 348). The court adopts and reaffirms its November 3, 2010 ruling and rejects this argument. Accordingly, Boeing and the Boeing Employee Benefits Plan Committee are ordered to produce any documents withheld from production under this legal theory.

Plaintiffs also take issue with Boeing's claim of the attorney-client privilege and work product for documents associated with the decision to deny plaintiffs the benefits they seek. Again, the court set forth the standards concerning the attorney-client privilege and work product doctrine and its application to this case in the November 3, 2009 <u>Memorandum and Opinion</u>. (Doc. 348). The court reaffirms its prior rulings. More importantly, plaintiffs cite no specific document in their motion to compel. Under the circumstances, the court declines plaintiffs' motion to compel documents designated as protected by the attorney client privilege or work product doctrine.

Finally, Boeing raises the technical argument that plaintiffs' motion is expressly limited to documents in the possession of the "plan administrator." Boeing argues that committee members who acquired documents in "their capacity as Boeing employees that are unrelated to their service on the committee" are not obligated to produce the documents

because they were wearing a "different hat," i.e., a "Boeing employee" rather than a "Committee Member."

This argument is perplexing because, as a practical matter, plaintiffs will ultimately be able to secure such documents from *Boeing* if they are relevant and not otherwise protected by a privilege. However, if the "Boeing defendants" seriously propose a game of "guess-which-hat-I'm-wearing" the court will oblige the parties with a set of rules. Accordingly, the "Boeing defendants" are ordered to produce a detailed log of any and all documents which are withheld based on the claim that the individual received the document in one capacity or another. The log shall include the date the document was created, the author, *any* recipient, the date the document was distributed to *each* recipient, the nature and purpose of the document, and, finally, a detailed explanation of why a particular document was received by a person in a particular capacity. The log shall be filed and served within ten (10) days of this order. Alternatively, the "Boeing defendants" may simply produce the documents being withheld under this theory within ten (10) days.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 339)** is **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings expressed herein.

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been

obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 22nd day of March 2010.

S/ Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge

## Rule 502.     Attorney-Client Privilege and Work Product; Limitations on Waiver

The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work product protection.

**(a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.**  When the disclosure is made *in a Federal proceeding or to a Federal office or agency* and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:

> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

**(b) Inadvertent disclosure.**  When made *in a Federal proceeding or to a Federal office or agency*, the disclosure does not operate as a waiver in a Federal or State proceeding if:

> (1) the disclosure is inadvertent;
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

**(c) Disclosure made in a State proceeding.**  When the disclosure is made *in a State proceeding* and is not the subject of a State-court order concerning waiver, the disclosure does not operate as a waiver in a Federal proceeding if the disclosure:

> (1) would not be a waiver under this rule if it had been made in a Federal proceeding; or
> (2) is not a waiver under the current law of the State where the disclosure occurred.

**(d) Controlling effect of a court order.**   A Federal court may order that the privilege or protection is not waived by disclosure connected with the *litigation pending before the court*—in which event the disclosure is also not a waiver in any other Federal or State proceeding.

**(e) Controlling effect of a party agreement.**  An agreement on the effect of disclosure *in a Federal proceeding* is binding only on the parties to the agreement, unless it is incorporated into a court order.

**(f) Controlling effect of this rule.**  Notwithstanding Rules 101 and 1101, this rule applies to State proceedings and to Federal court-annexed and Federal court-mandated arbitration proceedings, in the circumstances set out in the rule.  And notwithstanding Rule 501, this rule applies even if State law provides the rule of decision.

**(g) Definitions.**  In this rule:
> (1) "attorney-client privilege" means the protection that applicable law provides for confidential attorney-client communications; and
> (2) "work-product protection" means the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial.

(Emphasis in bold italics added).