# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

|   |   |
|---|---|
| SOCIETY OF PROFESSIONAL ) <br> ENGINEERING EMPLOYEES IN ) <br> AEROSPACE, IFPT LOCAL 2001, ) <br> AFL-CIO, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> THE BOEING COMPANY, et al., ) <br> ) <br> Defendants. ) <br> ) | **CIVIL ACTION** <br><br> No. 05-1251-MLB <br> and 07-1043-MLB |

## **MEMORANDUM AND ORDER**

This matter comes before the court on Boeing and Spirit's objections to Chief Magistrate Judge Karen Humphreys' May 4, 2010 order denying reconsideration of her prior denial of a joint motion for protective order. (Docs. 378, 393). The objections have been fully briefed and the matter is ripe for decision. (Docs. 399, 403, 407). The court has also reviewed the parties' submissions to Judge Humphreys. (Docs. 302, 303, 319, 329, 387 and 389). The objections are OVERRULED for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

On June 16, 2005, Boeing sold its aircraft manufacturing company to Spirit. The sale was complex in that it involved a continuing manufacturing operation. On June 16, approximately 8,000 employees left work as Boeing employees and returned on June 17 as Spirit

---

[1] The factual and procedural history is summarized from Judge Humphreys' March 22, 2010 order (Doc. 378). Defendants do not object to that portion of her order.

employees.  Those employees performed the same work at the same stations upon their return.  As part of the underlying agreement, Boeing agreed to a one-year "support period" during which Boeing provided e-mail services to all Spirit employees until Spirit obtained its own e-mail services.  During the "support period," Spirit employees accessed their e-mail accounts on Boeing's servers.

At the conclusion of the e-mail "support period," Spirit sent an email to all employees and instructed them to preserve any email which discussed certain topics related to the ongoing lawsuits.[2]  The transfer was to occur on June 5, 2006.  On the weekend prior to June 5, Boeing's information technology specialists (1) copied the contents of the Spirit employees' electronic mailboxes, (2) saved the e-mail messages to a location with shared access, and (3) deactivated Spirit employees from Boeing's network. On Monday morning, June 5, 2006, Spirit relocated the files to a secure area to which Boeing had no access and reconfigured the accounts so that Spirit employees would have continued access to their e-mail messages but from a Spirit domain (e.g., @spiritaero.biz).

Because of and during the e-mail "support period," Spirit and its employees had access to a large volume of e-mail messages created or received by "Boeing employees" before June 17, 2005.  One e-mail thread in particular involved Jeff Clark, Boeing's former director of

---

[2] Prior to the sale, Boeing and Spirit were informed of threats of age discrimination litigation from counsel in a case now pending before another judge of this court, Perry Apsley, et al. v. Boeing, Case No. 05-1368-EFM.  The letters sent to defendants requested that any documents containing information relating to the upcoming sale not be destroyed. As of June 2006, this suit and case no. 05-1368-EFM had been filed.

-2-

Employee/Union Relations who became a Spirit employee. Prior to the sale of Boeing, Clark communicated by e-mail with Joan Clark, an in-house labor attorney for Boeing, for purposes related to legal advice.

On Friday, May 29, 2009, three years <u>after</u> the end of the "support period," Spirit sent a compact disc containing 500 pages of documents to plaintiffs along with a copy to Boeing. On Monday morning, June 1, Boeing reviewed the disc and discovered Clarks' email thread, which had previously been identified on Boeing's privilege log. Boeing immediately contacted plaintiffs and attempted to invoke the clawback provision in the parties' agreed protective order. Plaintiffs refused to return the materials and defendants filed a motion to secure the return or destruction of the disc.

Judge Humphreys determined that Boeing had waived the attorney-client privilege by disclosing the documents to Spirit. She held that the clawback provision in the protective order did not apply because the disclosure occurred in June 2005 and the protective order was filed in May 2008.

Defendants object to Judge Humphreys' ruling on the basis that it is contrary to the law on attorney-client privilege:

> In those orders, the Court notes that the "general [waiver] rule" in the 10th Circuit is that the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party. [Doc. 378 at 10; Doc. 393 at 2]. In the March 22, 2010 Order, the Court stated that the "determinative issue" is "whether the Boeing's attorney-client privilege was waived when the e-mail messages were provided to a third party (Spirit) in June 2005." [Doc. 378 at 11 n.11 (emphasis omitted)]. By framing the issue as a garden-variety waiver question, Defendants' central argument is unaddressed – namely, no waiver occurred because there was no actual disclosure of the substance of any attorney-client communication to Spirit before Spirit and Boeing entered into joint

-3-

> defense arrangements under which any such disclosure would not constitute waiver. See <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395-97 (1981) (noting limits of the attorney-client privilege in the corporate context as necessarily fact-intensive). Significantly, the Court did not address this threshold consideration in either the March 22, 2010 Order or the May 4, 2010 Order.

(Doc. 399 at 7). Plaintiffs oppose, primarily on the basis that there was a disclosure.

## II. ANALYSIS

Federal Rule of Civil Procedure 72 governs the procedure for making, and the standard of review for ruling on, objections to orders of magistrate judges. Rule 72(a) states that magistrate orders regarding nondispositive matters shall be modified or set aside when they are "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A matter is nondispositive when it is a "pretrial matter, not dispositive of a claim or defense of a party." <u>Id.</u> Defendants' motion for protective order dealt with discovery of documents. A discovery request of this nature is a nondispositive matter. <u>Hutchinson v. Pfeil</u>, 105 F.3d 562, 566 (10th Cir. 1997) ("Discovery is a nondispositive matter. . . ."). Magistrate judges are afforded broad discretion when resolving discovery disputes. <u>Soma Med. Int'l v. Standard Chartered Bank</u>, 196 F.3d 1292, 1300 (10th Cir. 1999); <u>Smith v. MCI Telecomms. Corp.</u>, 137 F.R.D. 25, 27 (D. Kan. 1991).

Under the "clearly erroneous" standard set forth above, the court will affirm the magistrate judge's ruling "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" <u>Ocelot Oil Corp. v. Sparrow Indus.</u>, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948)). An order is "contrary

to law" when it fails to apply or misapplies relevant statutes, case law or rules of procedure. Botta v. Barnhart, 475 F. Supp.2d 174, 185 (E.D.N.Y. 2007).

**A. Joint Defense Agreement**

Defendants complain that Judge Humphreys did not address their "central argument" that the privileged documents were not reviewed until a joint defense agreement was in place. Plaintiffs respond that this argument was not presented to Judge Humphreys, as she observed in her March 22 Memorandum and Order. See Doc. 378, n. 16. Defendants reply that the issue was presented in submissions to Judge Humphreys. (Doc. 401, n. 1). The court has reviewed the cited submissions and there is no mention of any joint defense agreement. Furthermore, if there is one, it has never been produced. Nor have defendants ever provided the effective date of the agreement. These are material omissions.

Therefore, defendants' objection on this basis is denied. Abdulhaseeb v. Calbone, 600 F.3d 1301, 1310 (10th Cir. 2010)(issues not presented to the magistrate are deemed waived).

**B. Waiver of Privilege**

Defendants' other argument is that the court should find Judge Humphreys' order to be contrary to law. They urge this court to reverse her decision on the basis of Orbit One Commmc'ns, Inc. v. Numerex Corp., 255 F.R.D. 98 (S.D.N.Y. 2008). Orbit One, however, is clearly distinguishable from this case as the decision was based on New York State law. As discussed in Orbit One, "where state law supplies the rule of decision, state law determines the existence and scope of the attorney-client privilege." 255 F.R.D. at 103. The

-5-

plaintiff in Orbit One brought a claim of breach of contract against the defendant, a state law claim.  Plaintiffs in this case contend that defendants' actions violated federal law, specifically ERISA. Therefore, the court is to apply federal common law in deciding privilege issues, see Sonnino v. Univ. Kansas Hosp. Auth., 220 F.R.D. 633, 644 (D. Kan. 2004), and the court is not persuaded that Judge Humphreys' decision was contrary to federal common law because she did not follow a decision grounded on New York state law.

In finding that Boeing waived its privilege by allowing Spirit possession of the privileged e-mail documents, Judge Humphreys relied on the standards set forth in In re Qwest Commc'ns Int'l Inc., 450 F.3d 1179, 1185 (10th Cir. 2006).  Admittedly, Qwest is not "on all fours" with the facts in this case, but it is more applicable than Orbit One.

In Qwest, The Tenth Circuit held that "[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party. This court has stated, the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."  450 F.3d at 1185 (internal citations omitted).

Defendants' insist that Boeing "jealously guarded" its claim to privileged documents during the sale to Spirit.  Boeing claims that its only viable option with respect to the e-mails was to "... leave the documents and files at the Wichita facility, thereby ensuring their preservation for litigation, while continuing to vigilantly

-6-

protect the privileged documents from any subsequent disclosure by either Boeing or Spirit to an outside third party." (Doc. 329 at 5). As near as the court can determine, Boeing has never supported its "only option" argument with an affidavit. And, like Judge Humphreys, this court is not persuaded that Boeing had only three options. (Doc. 378, n. 13). But even if Boeing's "only option" argument is given some credit, Boeing has never provided a satisfactory explanation why it allowed the confidential e-mail thread - which it readily identified over a weekend in May 2009 - to sit "untouched in a former [Boeing] employee's e-mail account" (Defendants' description, Doc. 399 at 9) for three years.

As stated in Qwest, this court will grant no greater protection than Boeing's own precautions warrant. Based on the facts in this case, the court does not believe that Boeing has "jealously guarded" its privileged documents. Given the size of the Boeing/Spirit sale, it is reasonable to assume that it took a long time to put the details of the sale together. There is nothing in the record to indicate that Boeing's privileged communications could not have been identified and protected during the "pre-sale" period. Boeing allowed Spirit to have access to the servers for the one year "support period" but then apparently only copied the e-mails which contained topics central to litigation and did nothing to protect the privileged documents that remained on Spirit's servers. There is nothing in the record to explain why Boeing's privileged communications were not identified and protected during the "support period." In this regard, the court does not buy Boeing's repeated arguments about "threatened litigation." Boeing has not satisfactorily explained why it could not have

identified and protected its confidential communications notwithstanding the threats. On the contrary, it is reasonable to think that threatened or even actual litigation would enhance Boeing's motivation to do so. No court order prevented such action. Finally, and perhaps most tellingly, Boeing did nothing in the 3-year period between the end of the "support period" and the disclosure of the e-mail thread. Boeing's almost instantaneous discovery of the disclosure belies Boeing's claim that the thread was somehow buried in a mass of information.

Therefore, the court is not convinced that Judge Humphreys' decision was contrary to law and is not "left with the definite and firm conviction that a mistake has been committed."[3] Ocelot Oil Corp., 847 F.2d at 1464.

## III. CONCLUSION

Defendants' objections to Chief Magistrate Judge Humphreys' May 4, 2010 Order are OVERRULED for the reasons stated herein. No motion for reconsideration will be allowed. Fed. R. Civ. P. 1. It is past time to move this matter to a conclusion on its merits and not dwell on a "rabbit trail."[4]

IT IS SO ORDERED.

Dated this __4th__ day of August 2010, at Wichita, Kansas.

---

[3] The remaining points made by defendants in their motion merely argue with the reasoning of Judge Humphreys' ruling. Defendants have not cited any further authority which would establish that the decision was contrary to law.

[4] The late Judge Frank Theis' term for an issue which is of only tangential significance to the main issues in the case.

-8-

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE