IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SOCIETY OF PROFESSIONAL
ENGINEERING EMPLOYEES IN
AEROSPACE, et al.,

                Plaintiffs,

v.                                        Nos.   05-1251-JWB
                                                  07-1043-JWB

BOEING CO., et al.,

                Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on Boeing's[1] motion for separate trials (Doc. 697) and Boeing's motion for summary judgment (Doc. 727). The motions have been fully briefed and are ripe for decision. (Docs. 698, 707, 718, 728, 745, 752.)[2] Boeing's motions are DENIED for the reasons stated herein.

**I.    Facts and Procedural History[3]**

This case revolves around the sale of Boeing's Wichita plant to Spirit in 2005 and Boeing's treatment of its employees surrounding the sale. An Asset Purchase Agreement ("APA") was executed in February 2005 and contained terms regarding the hiring of Boeing's workforce. While Spirit was not required to hire all Boeing employees, the purchase price was increased if Spirit hired less than 90% of Boeing's workforce. Boeing employees were informed that they must execute a Consent to Release Information form to be considered for employment by Spirit. Boeing

---

[1] The several Boeing defendants will be collectively referred to as Boeing unless otherwise noted.
[2] All citations to documents reference documents filed in Case Number 05-1251 unless otherwise noted.
[3] The majority of this background is largely taken from Judge Belot's memorandum and order entered December 11, 2012. (Doc. 581.) A complete background is contained in that order.

1

would then release the employee's record to Spirit for consideration. Spirit hired most but not all of the Boeing employees. (Doc. 581 at 4-7.)

The Boeing Employee Benefits Plans Committee ("Committee" or "EBPC"), which is the Plan Administrator of the Boeing Company Employee Retirement Plan ("BCERP"), the Boeing Retiree Health and Welfare Benefit Plan ("BRHP"), and the Boeing Company Layoff Benefits Plan ("Boeing Layoff Benefits Plan"), informed all Boeing employees prior to the sale that employees who refused to apply for or declined a position at Spirit and those who went to work at Spirit would not be treated as "laid off" for the purposes of pension, medical and severance benefits. Employees who accepted positions with Spirit were considered "terminated pursuant to divestiture," which is abbreviated as "TER-DIV." Employees who applied for a position with Spirit but were not hired were considered "laid off" from Boeing. Finally, Boeing employees who did not apply for a position with Spirit or declined an offer of employment with Spirit were considered "resigned" from employment. This last group is comprised of the remaining individual Plaintiffs in this case. (Doc. 581 at 9-10.)

This litigation began as a result of Boeing's classification of its employees after the sale. Litigation was initiated in 2005 by the Society of Professional Engineering Employees in Aerospace ("SPEEA"). SPEEA and Plaintiff International Association of Machinists and Aerospace Workers and its District Lodge 70 ("IAM") are unincorporated labor organizations that represent employees in industries affecting commerce for purposes of collective bargaining.[4] These unions represented a majority of the workforce at Boeing. SPEEA initially brought claims pursuant to § 301 of the Labor Management Relations Act ("LMRA"), § 510 of ERISA, and the

---

[4] International Brotherhood of Electrical Workers, Local 271 ("IBEW") is not a named party in this case but one named plaintiff, Larry Moore, was a member of IBEW.

2

Declaratory Judgment Act. (Doc. 1.) In 2007, several individual plaintiffs filed an action against Boeing, the BCERP, the Retiree Health Plan, the EBPC, Spirit Holdings and the Spirit Mirror Plans in case number 07-1043. (Doc. 581 at 10.) Plaintiffs[5] filed motions to consolidate in both cases. (Doc. 74 in Case No. 05-1251 and Doc. 42 in Case No. 07-1043.) Magistrate Judge Humphreys granted the motions to consolidate. (Doc. 81.) Magistrate Judge Humphreys held that Boeing could later move for separate trials pursuant to Fed. R. Civ. P. 42(b) for "convenience, to avoid prejudice, or to expedite and economize." (Doc. 81 at 2.)

In their complaints, Plaintiffs allege claims pursuant to § 301 of the LMRA. Essentially, Plaintiffs allege that Boeing breached the various collective bargaining agreements (CBAs) due to Boeing's failure to classify all employees as "laid off" from employment at Boeing at the time of the sale. As a result, the employees who were between the ages of 49 and 55 could not collect an early retirement pension and health care benefits at age 55. Plaintiffs also allege that Boeing breached the CBAs by amending the BCERP. The individual plaintiffs additionally brought claims under ERISA, seeking the benefits that would have been provided if the employees were "laid off." The terms "laid off" and "layoff" are used in various Boeing documents, including the CBAs and the benefit plans, but they are not defined in the documents. The meaning of the terms has been the subject of this litigation.

The individual plaintiffs were comprised of two different groups: the Harkness Class and the McCartney-Boone Plaintiffs. The Harkness Class was comprised of Boeing employees who were between the ages of 49 and 54 years of age as of June 16, 2005, and began employment with Spirit on Day One (June 17, 2005). The McCartney-Boone Plaintiffs are comprised of Boeing

---

[5] "Plaintiffs" means all union plaintiffs and individual plaintiffs.

employees who were between the ages of 49 and 54 years of age as of June 16, 2005, but either refused to complete the consent form or declined an offer of employment from Spirit. (Doc. 548 at 9.)

In July 2008, the court granted class certification of the Harkness Class. (Doc. 118.) The Harkness Class included approximately 1,800 individuals. There are fifteen individuals remaining in the group of McCartney-Boone Plaintiffs. The McCartney-Boone Plaintiffs did not seek class certification.

On October 3, 2011, the pretrial order was entered. The pretrial order sets forth Plaintiffs' claims and Boeing's defenses and estimated that the trial would last two to three weeks. The pretrial order set forth a briefing schedule for the parties' motions for summary judgment. The pretrial order did not contemplate a motion to bifurcate the trials. (Doc. 548.)

The parties filed their respective motions for summary judgment in late 2011 and in 2012. Boeing moved for summary judgment on all claims. (Doc. 555.) On December 11, 2012, Judge Belot entered an order denying Plaintiffs' motion for partial summary judgment and granting in part and denying in part Boeing's motion for summary judgment (the "Summary Judgment Order"). (Doc. 581.) Plaintiffs moved for reconsideration of the Summary Judgment Order pertaining to IAM's claim for breach of contract. (Doc. 582.) Boeing opposed the motion due to Plaintiffs' failure to show that the motion met the standards for reconsideration and because Plaintiffs raised arguments that could have been raised at the time the motion was filed. (Doc. 584.) The court denied Plaintiffs' motion. (Doc. 585.)

On January 31, 2013, the court issued an order determining that Plaintiffs had a right to a jury trial on the § 301 claims. (Doc. 588.) The court declined Plaintiffs' request that the jury issue

4

an advisory opinion on the ERISA claims. (*Id.*) The parties engaged in further discovery on damages after the court's orders. On May 8, 2015, Plaintiffs filed an unopposed motion for approval of the Harkness Class settlement. (Doc. 632.) The court held a fairness hearing on August 19, 2015, and entered an order approving the Harkness Class settlement on September 3, 2015. (Doc. 671.)

The McCartney-Boone Plaintiffs and the unions have not resolved the remaining claims. On April 24, 2017, Judge Marten held a status conference.[6] The parties then submitted an agreed scheduling order to the court. (Doc. 689.) The scheduling order established deadlines for the remaining damages discovery. It also included deadlines for Boeing to file motions for summary judgment on liability and damages. (*Id.*)

On June 15, 2017, Boeing filed a motion for separate trials. (Doc. 697.) Plaintiffs filed a response in opposition. (Doc. 707.) On September 22, 2017, Boeing again moved for summary judgment on all remaining claims. (Doc. 727.) On January 8, 2018, Plaintiffs filed a response to Boeing's motion arguing that the motion failed to comply with this court's rules on motions for reconsideration and that it failed on the merits. (Doc. 745.) On April 18, 2018, this case was transferred to the undersigned.

## II.     Motion for Summary Judgment

Boeing moves for summary judgment on all claims. Boeing essentially argues that it had the authority under the CBAs to exercise discretion and determine that the individual plaintiffs were not laid off. Boeing further argues that the individual Plaintiffs cannot maintain their breach of contract claim because they either refused to apply for employment or quit their jobs before the

---

[6] This case was previously transferred to Judge Marten upon Judge Belot's retirement.

facility was sold. Regarding the ERISA claims, Boeing argues that the EBPC properly exercised its discretion to determine that the individual Plaintiffs were not laid off from their employment at Boeing. Boeing argues that its motion is not one for reconsideration as the Summary Judgment Order "overwhelmingly focused on the claims of the Harkness Class, with very little attention directed to the unique circumstances of the Individual Plaintiffs." (Doc. 728 at 26.) However, Boeing admits that its previous memorandum only devoted one-half page to the individual Plaintiffs' contract claims and two pages to their individual ERISA claims. (Doc. 728 at 25, n. 8.) Boeing contends that the Summary Judgment Order may be revised at any time, citing Fed. R. Civ. P. 54(b). (Doc. 728 at 27.)

In response, Plaintiffs argue that Boeing's motion seeks reconsideration of the Summary Judgment Order. Plaintiffs contend that Boeing has not complied with D. Kan. Rule 7.3 in that the motion is not timely and does not identify a basis for reconsideration under the local rule. (Doc. 745 at 61-65.) Boeing responds that Rule 7.3 is not applicable as "it is limited to motions 'asking a judge . . . to reconsider an order or decision made by **that judge** . . . .'" (Doc. 752 at 3) (emphasis in original). Boeing argues that the plain language of the rule is limited to applying only when a party seeks reconsideration from the judge who issued the original order. Boeing further argues that the present motion focuses exclusively on the McCartney-Boone Plaintiffs and includes arguments not presented to or decided by the court in the Summary Judgment Order. (*Id*.) Boeing urges the court to review its motion on the merits in the interest of justice.

The pretrial order clearly contemplated one round of summary judgment briefing in this matter pertaining to liability issues. District court judges, however, are "free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007).

6

Boeing may characterize its motion as one for summary judgment and not a motion for reconsideration, but Boeing is clearly asking the undersigned to issue a decision revising the Summary Judgment Order. Therefore, regardless of how the motion is titled, Boeing's motion is one for reconsideration and it is governed by Rule 7.3.

Local Rule 7.3 states that a "party may file a motion asking a judge or magistrate judge to reconsider an order or decision made by that judge or magistrate judge." Rule 7.3 has different standards depending on whether the order was dispositive or non-dispositive. If an order is dispositive, the movant must file a motion pursuant to Fed. R. Civ. P. 59(e) or 60. If the order is non-dispositive, the Rule requires a movant to file its motion within 14 days and to base its motion for reconsideration on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3(b).

There is not a clear standard as to whether an order disposing of some but not all claims, as in this case, is dispositive. *See Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (comparing *Johnson v. Simonton Bldg. Properties, Inc.*, 2009 WL 902409, *2 (D. Kan. Mar. 31, 2009) ("the court's order was dispositive because it terminated some of plaintiff's claims.") and *Seyler v. Burlington Northern Santa Fe Corp.*, 121 F.Supp.2d 1352, 1355 (D. Kan. 2000) ("The Court's rulings .... were non-dispositive, in that they did not fully resolve the case and could be challenged by a timely motion under Rule 7.3(b), ...").

However, the court need not resolve this issue as the result under those rules would be the same. Under Rule 60, a movant may seek relief from a final order for various grounds, but the motion may not be filed after one year. Under Rule 59(e), a motion must be filed within 28 days or it is untimely. Therefore, Boeing's motion would be denied as untimely under Rule 60 or 59(e).

Turning to Rule 7.3(b), Boeing's motion is also untimely. Moreover, Boeing does not assert a basis for reconsideration under the rule. Instead, Boeing argues that the rule does not apply because its plain language is only applicable to a ruling by "that" judge. (Doc. 752 at 7.)

The court declines to read Rule 7.3 so narrowly. In this district, it is not uncommon for cases to be transferred to a different judge at any stage of the proceedings or even right before trial. If Boeing's reading of the rule was applied in all cases, parties could simply refile motions for summary judgment, or any other motion previously filed, upon the case being transferred to a new judge. That would be in clear contravention of the purpose of the rule which was adopted to provide a time limit for reconsiderations and specific circumstances under which such a motion could be filed. Without such a limitation, a party could prolong litigation by filing repetitive motions. Therefore, the court finds that Rule 7.3 applies to Boeing's motion for summary judgment.

Boeing asks this court to depart from the rule and consider the motion in the interest of judicial economy. (Doc. 752 at 8.) Boeing cites one case from this district in support of its position that the court should depart from the rule, *Oyler v. United States*, No. 92-2104-JWL, 1995 WL 152736, at *1 (D. Kan. Mar. 17, 1995), modified on reconsideration, No. 92-2104-JWL, 1995 WL 462237 (D. Kan. July 7, 1995). In *Oyler*, the court modified a previous order which required the sale of property. The court noted that untimely reconsideration was appropriate as the new proposal was an equitable partition of the property that the court had previously ordered sold by public sale. *Id.* The court noted that its original order was based on its decision that the proposed plan was not practicable and the new plan submitted on reconsideration alleviated the concerns.

*Id.* at *3. The court finds that this authority is inapplicable to the present circumstances and does not offer a persuasive reason for departing from the rules.

Notably, Boeing contends that the arguments presented in this motion were not presented to Judge Belot.[7] (Doc. 752 at 3.) Boeing, however, does not state that these arguments could not have been presented earlier or are based on new evidence. Rather, Boeing's position seems to be that it is proper to consider these arguments as the prior motions and the Summary Judgment Order were focused on the Harkness Class. This is not a sufficient basis to consider the motion for reconsideration on the merits. Boeing drafted its initial motion for summary judgment and the arguments addressed therein. The court did not limit the arguments or content of Boeing's motion. Rather, Boeing chose to limit its arguments regarding the McCartney-Boone Plaintiffs to a mere two and a half pages. Boeing's strategic decision does not mean that Boeing now gets to file a new motion for summary judgment with arguments that could have been presented to Judge Belot but were not.[8] *See Neonatal Prod. Grp., Inc. v. Shields,* ---F. Supp.3d---, 2018 WL 1083261, at *7 (D. Kan. Feb. 28, 2018). (a motion for reconsideration "is not [an] appropriate [device] to revisit issues already addressed or advance arguments that could have been raised in prior briefing.")

Moreover, the court conducted a thorough review of the Summary Judgment Order. After review, the court finds no reason to depart from that decision. The court further finds no basis

---

[7] Plaintiffs disagree and contend that Boeing has essentially re-argued its motion. (Doc. 745 at 62.)
[8] The fact that an agreed upon scheduling order contemplated the filing of a summary judgment motion does not negate a party's obligation to comply with the local rules. In this case, the parties informed the court that they had agreed upon a scheduling order and the court entered the same. Plaintiffs had "assumed Boeing's proposed new motion for summary judgment on liability would be based on some new legal authority or new factual developments, something that was not available when Boeing last moved for summary judgment." (Doc. 745 at 61.) Under those circumstances, a court may extend the deadline to file a motion for reconsideration as a party is basing its motion upon a factor set forth in the rule. *See* Local Rule 7.3(b). However, as discussed *supra*, Boeing has not asserted a basis under the rule to consider its motion.

under the rules to reconsider the Summary Judgment Order. Boeing has not identified any new evidence, change in law or error in the Summary Judgment Order. Moreover, had Boeing believed that the Summary Judgment Order was erroneous due to a failure to consider the individual Plaintiffs' claims, Boeing was required to file a timely motion for reconsideration under the rules.

Therefore, Boeing's motion for summary judgment is denied. The court finds that there are disputed issues of material fact that must be resolved by the trier of fact. (*See* Doc. 581.)

### III. Motion for Separate Trials

Boeing requests that the court separate the trials into five separate groups: a bench trial for the ERISA claims and four separate trials which are segregated by union group and whether the plaintiff refused to apply or rejected Spirit's job offer. Plaintiffs object to Boeing's motion on the basis that the segregation would be prejudicial to them and result in significant costs for litigation.

The court may order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Courts have "broad discretion in deciding whether to sever issues for trial." *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1447 (10th Cir. 1985). "The party seeking bifurcation has the burden of showing that separate trials are proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience." *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010) (quoting *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 1995 WL 769174, at *1 (D. Kan. Dec. 21, 1995)).

These two cases were consolidated for all purposes, including trial, in early 2008. (Doc. 81.) The pretrial order stated that a trial, of all claims and all parties, would last two to three weeks. While separation of the claims would result in the individual plaintiffs only testifying at their own trial, Boeing admits that all of their witnesses would have to testify at each trial. (Doc. 718 at 10.)

Moreover, the experts hired by the parties on damages would also likely have to be called at all trials. (Doc. 718 at n. 7.) Therefore, by separating the claims for jury trial into four different groups, the court will have to empanel four juries and hold four separate trials with most of the witnesses being the same in all trials. Clearly, this proposal would not be convenient nor would it expedite this matter. Therefore, Boeing must show that it will be prejudiced if the court does not separate the trials as it has proposed.

Boeing contends that it will be prejudiced by trying all of the section 301 claims to the jury because the jury will be confused by the different factual circumstances surrounding each individual plaintiff's separation with Boeing and the separate CBAs. The court disagrees. The court will properly instruct the jury on the claims and consideration of the evidence. The court has a "presumption that juries follow their instructions." *N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1114 (10th Cir. 2009). The court has no reason to assume that the jury will not follow the court's instructions in this trial or be able to separately consider each plaintiff's claims. Moreover, as pointed out by Plaintiffs, Boeing's reasoning for separating the trials would result in more jury trials than the proposed four. Boeing contends that one of the reasons to separate the trials is because of the grievance procedure which is different for all CBAs. Although Boeing proposes that the individual plaintiffs belonging to either IAM and IBEW be tried together, the two different unions acted differently with respect to the grievances. (Doc. 698 at 16.) IAM filed and withdrew grievances and IBEW never filed any grievance. Clearly, those are factual disputes but Boeing seeks to join these two groups of union employees.

Boeing has not established that it will suffer any prejudice by having one jury trial on the issues to be decided by a jury. Any potential jury confusion can be alleviated by clear jury

11

instructions. Separating the claims into four jury trials, however, would result in a significant burden in terms of litigation costs and delay of this case which has already been delayed significantly.

With respect to the McCartney-Boone Plaintiffs' ERISA claims, Judge Belot has previously ruled that the jury will not issue an advisory opinion. The court sees no reason to disturb that ruling. At this time, the court intends to proceed to a jury trial on the claims triable to the jury. After conclusion of the jury trial, the court will confer with the parties on a schedule for a bench hearing with regard to the ERISA claims. However, the court will defer ruling on whether the parties can present evidence that is specific to the ERISA claims during the jury trial. Those issues are more appropriate for motions in limine.

### IV. Conclusion

Boeing's motion for separate trials (Doc. 697) and Boeing's motion for summary judgment (Doc. 727) are DENIED.

IT IS SO ORDERED this 20th day of July, 2018.

                                                  s/ John W. Broomes
                                                  JOHN W. BROOMES
                                                  UNITED STATES DISTRICT JUDGE